

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) | |
| ) | Civil No. 08 CV 5560 |
| Plaintiff, ) | |
| ) | Judge John F. Grady |
| v. ) | |
| ) | Magistrate Judge Maria Valdez |
| GLENN L. PATTEN, individually, and ) | |
| doing business as Glenn L. Patten ) | |
| Marketing Solutions and as Marketing ) | |
| Solutions, ) | |
| ) | |
| Defendant. ) | |

## STIPULATED ORDER FOR PERMANENT INJUNCTION AND FINAL JUDGMENT

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), has filed a

Complaint for Permanent Injunction and Other Equitable Relief ("Complaint") pursuant to

Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), charging

Defendant Glenn L. Patten, individually, and doing business as Glenn L. Patten Marketing

Solutions and as Marketing Solutions, with engaging in deceptive acts or practices in violation of

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and with assisting and facilitating the

commission of deceptive and abusive telemarketing acts and practices, in violation of Section

310.3(b) of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.

The Commission and Defendant Glenn L. Patten have consented to the entry of this

Stipulated Order for Permanent Injunction and Final Judgment ("Order") in settlement of the

Commission's Complaint against him, without a trial or adjudication of any issue of law or fact

herein.

Dockets.Justia.com

NOW, THEREFORE, the Commission and Defendant Glenn L. Patten, individually and doing business as Glenn L. Patten Marketing Solutions, and Marketing Solutions ("Defendant"), having requested the Court to enter this Order, it is hereby **ORDERED, ADJUDGED, AND DECREED**:

## FINDINGS

1.      This is an action by the Commission initiated under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b). Pursuant to this section, the Commission has the authority to seek the relief contained herein.

2.      The Commission's Complaint states a claim upon which relief may be granted against Defendant under Sections 5(a), 13(b), and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 53(b), and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108.

3.      This Court has jurisdiction over the subject matter of this case and all parties hereto. Venue in the United States District Court for the Northern District of Illinois is proper.

4.      The alleged activities of Defendant are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

5.      Defendant, without admitting the allegations set forth in the Commission's Complaint, agrees to entry of this Order.

6.      Defendant waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order. Defendant further waives and releases any claims he may have against the Commission, its employees, representatives or agents.

7.      Defendant agrees that this Order does not entitle him to seek or obtain attorneys' fees as a prevailing party under the Equal Access to Justice Act, 28 U.S.C. § 2412, *as amended*

*by* Pub. L 104-121, 110 Stat. 847, 863-64 (1996), and Defendant further waives any right to attorneys' fees that may arise under said provision of law.

8.      Any voluntary bankruptcy petition filed by Defendant does not automatically stay this action, which the Court finds is the "commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power," as set forth in 11 U.S.C. § 362(b)(4).

9.      Any voluntary bankruptcy petition filed by Defendant does not divest this Court of jurisdiction to enter this Order against the Defendant.

10.     Entry of this Order is in the public interest.

## ORDER

## DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1.      **"Account number"** means any credit or debit card number, bank account number, deposit account number, personal identification number ("PIN"), access code, or security code, needed to charge or debit a consumer's account.

2.      **"Assets"** means any legal or equitable interest in, right to, or claim to, any real or personal property, including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), and all cash, wherever located.

3.      **"Assisting others"** means providing goods or services to any person or entity engaged in marketing or telemarketing, including, but not limited to: (a) providing for or arranging for the provision of mail or telephone lists that contain, incorporate, or utilize

consumers' account numbers; (b) preparing or providing, or causing to be prepared or provided, telephone sales scripts or other materials for use in connection with the promotion of products or services to consumers; (c) providing or arranging for the provision of telemarketing services; (d) performing or providing marketing services of any kind; (e) developing, providing, or arranging for the provision of names of potential customers; and (f) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints, obtaining or receiving identifying and financial information from consumers, and communicating with consumers on behalf of the seller or telemarketer.

4.  **"Consumer"** means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

5.  **"Customer"** means any person who has paid, or may be required to pay, for goods or services offered for sale or sold by Defendant.

6.  **"Defendant"** means Glenn L. Patten, by whatever names he may be known, individually and doing business as Glenn L. Patten Marketing Solutions, and Marketing Solutions.

7.  **"Document"** is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

8.  **"Fulfillment product or service"** means any product or service sold or provided or intended to be sold or provided to consumers.

9. **"Seller"** shall have the meaning set forth in Section 310.2(z) of the Telemarketing Sales Rule, 16 C.F.R. § 310.2(z).

10. **"Telemarketing"** means any plan, program, or campaign (whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310) that is conducted to induce the purchase of goods or services or the payment of money by means of the use of one or more telephones.

11. **"Telemarketer"** shall have the meaning set forth in Section 310.2(bb) of the Telemarketing Sales Rule, 16 C.F.R. § 310.2(bb).

## I. PROHIBITED PRACTICES

**IT IS THEREFORE ORDERED** that Defendant, and his officers, agents, directors, servants, employees, salespersons, independent contractors, corporations, subsidiaries, affiliates, successors, and assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, are permanently restrained and enjoined from:

A. Collecting, selling, renting, brokering, purchasing, transferring, or otherwise disclosing, consumers' account numbers, or assisting others in collecting, selling, renting, brokering, purchasing, transferring, or disclosing of consumers' account numbers, in any form, including, but not limited to, lists, computer tapes or other media, to, from, for, or with any unaffiliated third party for any marketing purpose. *Provided, however,* that Defendant may collect the account numbers of his own customers and disclose them to others for the sole purpose of assisting Defendant in processing and completing a specific transaction authorized by the customer; and

B.	Defendant agrees to relinquish any list of consumers' account numbers to the FTC that is in his possession or control and to destroy all other existing copies of the lists in his possession or control, including any copies maintained in computer readable form.

## II. MONITORING REQUIREMENTS

**IT IS FURTHER ORDERED** that Defendant, and his officers, agents, directors, servants, employees, salespersons, independent contractors, corporations, subsidiaries, affiliates, successors, and assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, in connection with collecting, selling, renting, brokering, purchasing, transferring, or otherwise disclosing any information about consumers, are permanently restrained and enjoined from:

A.	Failing to take reasonable steps sufficient to monitor his clients' advertising and promotional materials and activities to determine the nature of the products or services being offered, the costs, terms or conditions of sale, the representations to be made to consumers, and the truthfulness of these representations;

B.	Failing to promptly investigate fully any complaint or refund request received by Defendant, whether directly from consumers or from third parties, such as government agencies or Better Business Bureaus, regarding the business practices of Defendant's clients; notify his clients of such complaints or refund requests; determine how the complaints or refund requests will be addressed; and notify the consumer or third party from whom Defendant received the complaint or refund request of any action taken;

C.	Failing to terminate any services whatsoever to any person whom Defendant knows or should know, through the procedures described in Paragraphs A or B of this Section, or

otherwise, has engaged or is engaging in misrepresentations or omissions of any fact material to any consumer's decision regarding any offered transaction, billing of accounts without the consumer's express authorization, or any act or practice prohibited by Section I of this Order, until such person ceases engaging in such acts or practices; and

D.      Failing to immediately provide, by certified mail, all relevant information, including name, address, and telephone number of any person that Defendant terminates services to, pursuant to Paragraph C of this Section, to the Federal Trade Commission at the address provided in Section VIII of this Order.

### III. COMPLIANCE WITH THE TELEMARKETING SALES RULE

**IT IS FURTHER ORDERED** that Defendant, and his officers, agents, directors, servants, employees, salespersons, independent contractors, corporations, subsidiaries, affiliates, successors, and assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, are permanently restrained and enjoined from:

A.      Violating, or assisting others in violating, any provision of the Telemarketing Sales Rule, 16 C.F.R. Part 310 (a copy of which is attached hereto as **Attachment A**), as currently promulgated or as it is hereafter amended, including, but not limited to:

1.      Section 310.4(a)(4) of the TSR, 16 C.F.R. § 310.4(a)(4), by requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit after representing that consumers are guaranteed or are highly likely to receive a credit card or loan; and

2. Section 310.4(a)(5) of the TSR, 16 C.F.R. § 310.4(a)(5), by disclosing or receiving, for consideration, unencrypted consumer account numbers for use in telemarketing; or

B. Failing to obtain and review sample scripts from any seller or telemarketer prior to renting or selling any list to that seller or telemarketer in order to ensure that the rental or sale of any such list does not assist the seller or telemarketer in violating any provision of the Telemarketing Sales Rule.

## IV. EQUITABLE MONETARY RELIEF

**IT IS FURTHER ORDERED** that:

A. Judgment in the amount of One Hundred Twenty Thousand Dollars ($120,000 (USD)) is hereby entered in favor of the FTC and against Defendant as equitable monetary relief. *Provided, however,* that this judgment shall be suspended subject to the conditions set forth in Section V (Right to Reopen) of this Order;

B. All funds paid pursuant to this Order shall be deposited into a fund administered by the Commission or its agent to be used for equitable relief, including but not limited to consumer redress, and any attendant expenses for the administration of such equitable relief. Defendant shall cooperate fully to assist the Commission in identifying consumers who may be entitled to redress pursuant to this Order. In the event that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendant's practices alleged in the Complaint. Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement. Defendant shall have no right to challenge the Commission's choice of remedies under this Section. Defendant shall have no right to contest the manner of distribution chosen by

the Commission. No portion of any payments under the judgment herein shall be deemed a payment of any fine, penalty, or punitive assessment;

C.     In the event of any default on Defendant's obligation to make payment under this Section, interest, computed pursuant to 28 U.S.C. § 1961, as amended, shall accrue from the date of default to the date of payment, and shall immediately become due and payable;

D.     In accordance with 31 U.S.C. § 7701, Defendant is hereby required, unless he already has done so, to furnish to the Commission his taxpayer identifying numbers (social security number and employer identification number), which shall be used for purposes of collecting and reporting on any delinquent amount arising out of Defendant's relationship with the government. Defendant is further required, unless he already has done so, to provide the Commission with clear, legible and full-size photocopies of all valid driver's licenses that he possesses, which will be used for reporting and compliance purposes; and

E.     Defendant agrees that the facts as alleged in the Complaint filed in this action shall be taken as true, without further proof, in the event of any subsequent proceedings or litigation to enforce this Order or to collect amounts due pursuant to this Section, including, but not limited to, a non-dischargeability complaint in any bankruptcy case.

## V. RIGHT TO REOPEN

**IT IS FURTHER ORDERED** that:

A.     Within ten (10) business days after the date of entry of this Order by the Court, Defendant shall submit to the Commission a truthful sworn statement (in the form shown on **Attachment B** of this Order), that shall reaffirm and attest to the truthfulness, accuracy, and completeness of the financial statements signed by Defendant Glenn L. Patten, individually, and doing business as Glenn L. Patten Marketing Solutions and as Marketing Solutions, dated

February 6, 2008, and February 15, 2008 (collectively "Financial Statement"). Plaintiff's agreement to this Order is expressly premised upon the truthfulness, accuracy, and completeness of Defendant's financial condition, as represented in the Financial Statement referenced above, which contain material information upon which Plaintiff relied in negotiating and agreeing to the terms of this Order;

B.    If, upon motion of the FTC, the Court finds that Defendant has failed to disclose any material asset, materially misrepresented the value of any asset, or made any other material misrepresentation in or omission from Defendant's Financial Statement, the Court shall enter judgment against such Defendant, in favor of the FTC, in the amount of One Hundred Twenty Thousand Dollars ($120,000 (USD)), and the entire amount of the judgment shall become immediately due and payable. *Provided, however*, that in all other respects, this Order shall remain in full force and effect, unless otherwise ordered by the Court; and

C.    Proceedings instituted under this Section are in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law, including any other proceedings the Commission may initiate to enforce this Order.

## VI. COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Order:

A.    Within ten (10) days of receipt of written notice from a representative of the Commission, Defendant Glenn L. Patten shall submit additional written reports, sworn to or affirmed under penalty of perjury; produce documents for inspection and copying; appear for deposition; and/or provide entry during normal business hours to any business location in Defendant's possession or direct or indirect control to inspect the business operation; *provided,*

however, that upon application of the Commission and for good cause shown, the Court may enter an *ex parte* order granting immediate access to Defendant's business premises, wherever located, for the purpose of inspecting and copying all documents relevant to any matter contained in this Order;

B.     In addition, the Commission is authorized to monitor compliance with this Order by all other lawful means, including, but not limited to, the following:

1.     Obtaining discovery from any person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, and 45; and

2.     Posing as consumers and suppliers to Defendant Glenn L. Patten, Defendant's employees, or any other entity managed or controlled in whole or in part by Defendant, without the necessity of identification or prior notice; and

C.     Defendant Glenn L. Patten shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Order. The person interviewed may have counsel present.

*Provided*, however, that nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49 and 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

## VII. COMPLIANCE REPORTING BY DEFENDANT

IT IS FURTHER ORDERED that, in order that compliance with the provisions of this Order may be monitored;

A. For a period of five (5) years from the date of entry of this Order,

1. Defendant Glenn L. Patten shall notify the Commission of the following:

a. Any changes in residence, mailing addresses, or telephone numbers of Defendant, within ten (10) days of the date of such change;

b. Any changes in the employment status (including self-employment) of Defendant, and any change in the ownership interest of Defendant in any business entity, within ten (10) days of the date of such change. Such notice shall include the name and address of each business that Defendant is affiliated with, employed by, creates or forms, or performs services for; a statement of the nature of the business; and a statement of Defendant's duties and responsibilities in connection with the business or employment; and

c. Any changes in Defendant's name or use of any aliases or fictitious names; and

2. Defendant Glenn L. Patten shall notify the Commission of any changes in any business entity that Defendant Glenn L. Patten directly or indirectly control(s), or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor entity; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of a bankruptcy petition; or a change in the corporate name or address, at least thirty (30) days prior to such change, *provided* that, with respect to any proposed change in the corporation about which Defendant learns less than thirty (30) days prior to the date such action is to take place, the Defendant shall notify the Commission as soon as is practicable after obtaining such knowledge.

B.     One hundred eighty (180) days after the date of entry of this Order, Defendant

Glenn L. Patten shall provide a written report to the Commission, sworn to under penalty of

perjury, setting forth in detail the manner and form in which he has complied and is complying

with this Order. This report shall include, but not be limited to:

1.     The then-current residence address, mailing addresses, and telephone

numbers of Defendant;

2.     The then-current employment and business addresses and telephone

numbers of Defendant, a description of the business activities of each such employer or business,

and the title and responsibilities of Defendant, for each such employer or business; and

3.     A copy of each acknowledgment of receipt of this Order, obtained pursuant

to Paragraph C of Section IX; and

4.     Any other changes required to be reported under Paragraph A of this

Section.

C.     For the purposes of this Order, Defendant shall, unless otherwise directed by the

Commission's authorized representatives, mail all written notifications to the Commission to:

Associate Director for Enforcement
Federal Trade Commission
601 New Jersey Avenue N.W.
Washington, D.C. 20580
Re: *FTC v. Glenn L. Patten., et al.*
Civil Action No. _____; and

D.     For purposes of the compliance reporting and monitoring required by this Order,

the Commission is authorized to communicate directly with Defendant.

## VIII. RECORD KEEPING PROVISIONS

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry

of this Order, for any business where (1) Defendant is the majority owner of the business or directly or indirectly manages or controls the business, and where (2) the business is engaged in, or assists others engaged in, telemarketing, or the sale of leads or consumer lists, Defendant, and his agents, employees, officers, corporations, successors, and assigns, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from failing to create and retain the following records:

A.     Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B.     Personnel records accurately reflecting: the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C.     Customer files containing the names, addresses, telephone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

D.     Complaints and refund requests (whether received directly, indirectly or through any third party) and any responses to those complaints or requests;

E.     Copies of all sales scripts, training materials, advertisements, or other marketing materials; and

F.     All records and documents necessary to demonstrate full compliance with each provision of this Order, including, but not limited to, copies of acknowledgments of receipt of this

Order, required by Paragraph C of Section IX, and all reports submitted to the FTC pursuant to Section VII.

## IX. DISTRIBUTION OF ORDER BY DEFENDANT

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, Defendant shall deliver copies of the Order as directed below:

A.    **Defendant Glenn L. Patten as Control Person:** For any business that Defendant Glenn L. Patten controls, directly or indirectly, or in which Defendant has a majority ownership interest, Defendant must deliver a copy of this Order to all principals, officers, directors, and managers of that business. Defendant Glenn L. Patten must also deliver copies of this Order to all employees, agents, and representatives of that business who engage in conduct related to the subject matter of the Order. For current personnel, delivery shall be within five (5) days of service of this Order upon Defendant. For new personnel, delivery shall occur prior to them assuming their responsibilities.

B.    **Defendant Glenn L. Patten as Employee or Non-Control Person:** For any business where Defendant Glenn L. Patten is not a controlling person of a business but otherwise engages in conduct related to the subject matter of this Order, Defendant must deliver a copy of this Order to all principals and managers of such business before engaging in such conduct.

C.    Defendant Glenn L. Patten must secure a signed and dated statement acknowledging receipt of this Order, within thirty (30) days of delivery, from all persons receiving a copy of the Order pursuant to this Section.

## X. ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANT

**IT IS FURTHER ORDERED** that Defendant, within five (5) business days of receipt of

this Order as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of this Order.

## XI. SEVERABILITY

**IT IS FURTHER ORDERED** that the provisions of this Order are separate and severable from one another. If any provision is stayed or determined to be invalid, the remaining provisions shall remain in full force and effect.

## XII. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**JUDGMENT IS THEREFORE ENTERED** in favor of the Plaintiff and against the Defendant, pursuant to all the terms and conditions recited above.

**IT IS SO ORDERED.**

Dated: 10-2-08

United States District Judge

**SO STIPULATED:**

Dated: Sept. 29, 2008

WILLIAM BLUMENTHAL
General Counsel

Theresa M. McGrew
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
(312) 960-5634 [Telephone]
(312) 960-5600 [Facsimile]
Attorneys for Federal Trade Commission

Page 16 of 17

Dated: _8-1-2008_      Glenn L. Patten

Glenn L. Patten, individually and
doing business as Glenn L. Patten
Marketing Solutions, Marketing Solutions

---

## ALTERNATIVE FUELED VEHICLE BUYERS GUIDE

### Before Selecting An Alternative Fueled Vehicle Consider:

☑ **FUEL TYPE AND AVAILABILITY:** Know which fuel(s) power this vehicle. Determine whether refueling and/or recharging facilities that meet your driving needs are readily available.

☑ **OPERATING COSTS:** Fuel and maintenance costs for AFVs differ from gasoline or diesel-fueled vehicles and can vary considerably. Visit www.fueleconomy.gov.

☑ **PERFORMANCE/CONVENIENCE:** Vehicles powered by different fuels differ in their ability to start a cold engine, how long it takes to refill the vehicle's tank to full capacity, acceleration rates, and refueling methods.

☑ **ENERGY SECURITY/RENEWABILITY:** Consider where and how the fuel powering this vehicle is typically produced.

☑ **EMISSIONS:** Emissions are an important factor. For more information about how the vehicle you are considering compares to others, visit www.epa.gov/greenvehicle.

**Additional Information**

**DEPARTMENT OF ENERGY (DOE)**
For more information about AFVs, contact DOE's National Alternative Fuels Hotline, 1-800-423-1DOE, or visit DOE's Alternative Fuels Data Center website, www.afdc.doe.gov.

**NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION (NHTSA)**
For more information about vehicle safety, contact NHTSA's Auto Safety Hotline, 1-800-424-9393.

The information on this label is required by the Federal Trade Commission, 16 CFR Part 309.
For more information call toll-free (877) FTC-HELP or visit www.ftc.gov.

← 7.5 inches →

← 7 inches →

**Figure 6**

[60 FR 26955, May 19, 1995, as amended at 69 FR 55339, Sept. 14, 2004]

## PART 310—TELEMARKETING SALES RULE

Sec.
310.1 Scope of regulations in this part.
310.2 Definitions.
310.3 Deceptive telemarketing acts or practices.
310.4 Abusive telemarketing acts or practices.
310.5 Recordkeeping requirements.
310.6 Exemptions.
310.7 Actions by states and private persons.
310.8 Fee for access to the National Do Not Call Registry.
310.9 Severability.

AUTHORITY: 15 U.S.C. 6101-6108.

SOURCE: 68 FR 4669, Jan. 29, 2003, unless otherwise noted.

### §310.1 Scope of regulations in this part.

This part implements the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. 6101-6108, as amended.

## §310.2 Definitions.

(a) *Acquirer* means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization that operates or licenses a credit card system to authorize merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

(b) *Attorney General* means the chief legal officer of a state.

(c) *Billing information* means any data that enables any person to access a customer's or donor's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

(d) *Caller identification service* means a service that allows a telephone subscriber to have the telephone number, and, where available, name of the calling party transmitted contemporaneously with the telephone call, and displayed on a device in or connected to the subscriber's telephone.

(e) *Cardholder* means a person to whom a credit card is issued or who is authorized to use a credit card on behalf of or in addition to the person to whom the credit card is issued.

(f) *Charitable contribution* means any donation or gift of money or any other thing of value.

(g) *Commission* means the Federal Trade Commission.

(h) *Credit* means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

(i) *Credit card* means any card, plate, coupon book, or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.

(j) *Credit card sales draft* means any record or evidence of a credit card transaction.

(k) *Credit card system* means any method or procedure used to process credit card transactions involving credit cards issued or licensed by the operator of that system.

(l) *Customer* means any person who is or may be required to pay for goods or services offered through telemarketing.

(m) *Donor* means any person solicited to make a charitable contribution.

(n) *Established business relationship* means a relationship between a seller and a consumer based on:

(1) the consumer's purchase, rental, or lease of the seller's goods or services or a financial transaction between the consumer and seller, within the eighteen (18) months immediately preceding the date of a telemarketing call; or

(2) the consumer's inquiry or application regarding a product or service offered by the seller, within the three (3) months immediately preceding the date of a telemarketing call.

(o) *Free-to-pay conversion* means, in an offer or agreement to sell or provide any goods or services, a provision under which a customer receives a product or service for free for an initial period and will incur an obligation to pay for the product or service if he or she does not take affirmative action to cancel before the end of that period.

(p) *Investment opportunity* means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.

(q) *Material* means likely to affect a person's choice of, or conduct regarding, goods or services or a charitable contribution.

(r) *Merchant* means a person who is authorized under a written contract with an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(s) *Merchant agreement* means a written contract between a merchant and an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(t) *Negative option feature* means, in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer.

(u) *Outbound telephone call* means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

(v) *Person* means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

(w) *Preacquired account information* means any information that enables a seller or telemarketer to cause a charge to be placed against a customer's or donor's account without obtaining the account number directly from the customer or donor during the telemarketing transaction pursuant to which the account will be charged.

(x) *Prize* means anything offered, or purportedly offered, and given, or purportedly given, to a person by chance. For purposes of this definition, chance exists if a person is guaranteed to receive an item and, at the time of the offer or purported offer, the telemarketer does not identify the specific item that the person will receive.

(y) *Prize promotion* means:

(1) A sweepstakes or other game of chance; or

(2) An oral or written express or implied representation that a person has won, has been selected to receive, or may be eligible to receive a prize or purported prize.

(z) *Seller* means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration.

(aa) *State* means any state of the United States, the District of Columbia, Puerto Rico, the Northern Mariana Islands, and any territory or possession of the United States.

(bb) *Telemarketer* means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

(cc) *Telemarketing* means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. The term does not include the solicitation of sales through the mailing of a catalog

which: contains a written description or illustration of the goods or services offered for sale; includes the business address of the seller; includes multiple pages of written material or illustrations; and has been issued not less frequently than once a year, when the person making the solicitation does not solicit customers by telephone but only receives calls initiated by customers in response to the catalog and during those calls takes orders only without further solicitation. For purposes of the previous sentence, the term "further solicitation" does not include providing the customer with information about, or attempting to sell, any other item included in the same catalog which prompted the customer's call or in a substantially similar catalog.

(dd) *Upselling* means soliciting the purchase of goods or services following an initial transaction during a single telephone call. The upsell is a separate telemarketing transaction, not a continuation of the initial transaction. An "external upsell" is a solicitation made by or on behalf of a seller different from the seller in the initial transaction, regardless of whether the initial transaction and the subsequent solicitation are made by the same telemarketer. An "internal upsell" is a solicitation made by or on behalf of the same seller as in the initial transaction, regardless of whether the initial transaction and subsequent solicitation are made by the same telemarketer.

§310.3  **Deceptive telemarketing acts or practices.**

(a) *Prohibited deceptive telemarketing acts or practices.* It is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Before a customer pays[1] for goods or services offered, failing to disclose

---

[1] When a seller or telemarketer uses, or directs a customer to use, a courier to transport payment, the seller or telemarketer must make the disclosures required by §310.3(a)(1) before sending a courier to pick up payment or authorization for payment, or
*Continued*

truthfully, in a clear and conspicuous manner, the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer;[2]

(ii) All material restrictions, limitations, or conditions to purchase, receive, or use the goods or services that are the subject of the sales offer;

(iii) If the seller has a policy of not making refunds, cancellations, exchanges, or repurchases, a statement informing the customer that this is the seller's policy; or, if the seller or telemarketer makes a representation about a refund, cancellation, exchange, or repurchase policy, a statement of all material terms and conditions of such policy;

(iv) In any prize promotion, the odds of being able to receive the prize, and, if the odds are not calculable in advance, the factors used in calculating the odds; that no purchase or payment is required to win a prize or to participate in a prize promotion and that any purchase or payment will not increase the person's chances of winning; and the no-purchase/no-payment method of participating in the prize promotion with either instructions on how to participate or an address or local or toll-free telephone number to which customers may write or call for information on how to participate;

(v) All material costs or conditions to receive or redeem a prize that is the subject of the prize promotion;

(vi) In the sale of any goods or services represented to protect, insure, or otherwise limit a customer's liability in the event of unauthorized use of the customer's credit card, the limits on a cardholder's liability for unauthorized use of a credit card pursuant to 15 U.S.C. 1643; and

(vii) If the offer includes a negative option feature, all material terms and

conditions of the negative option feature, including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s).

(2) Misrepresenting, directly or by implication, in the sale of goods or services any of the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of a sales offer;

(ii) Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer;

(iii) Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer;

(iv) Any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

(v) Any material aspect of a prize promotion including, but not limited to, the odds of being able to receive a prize, the nature or value of a prize, or that a purchase or payment is required to win a prize or to participate in a prize promotion;

(vi) Any material aspect of an investment opportunity including, but not limited to, risk, liquidity, earnings potential, or profitability;

(vii) A seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity;

(viii) That any customer needs offered goods or services to provide protections a customer already has pursuant to 15 U.S.C. 1643; or

(ix) Any material aspect of a negative option feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s).

directing a customer to have a courier pick up payment or authorization for payment.

[2] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 et seq., and Regulation Z, 12 CFR 226, compliance with the disclosure requirements under the Truth in Lending Act and Regulation Z shall constitute compliance with § 310.3(a)(1)(i) of this Rule.

(3) Causing billing information to be submitted for payment, or collecting or attempting to collect payment for goods or services or a charitable contribution, directly or indirectly, without the customer's or donor's express verifiable authorization, except when the method of payment used is a credit card subject to protections of the Truth in Lending Act and Regulation Z,[3] or a debit card subject to the protections of the Electronic Fund Transfer Act and Regulation E.[4] Such authorization shall be deemed verifiable if any of the following means is employed:

(i) Express written authorization by the customer or donor, which includes the customer's or donor's signature;[5]

(ii) Express oral authorization which is audio-recorded and made available upon request to the customer or donor, and the customer's or donor's bank or other billing entity, and which evidences clearly both the customer's or donor's authorization of payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction and the customer's or donor's receipt of all of the following information:

(A) The number of debits, charges, or payments (if more than one);

(B) The date(s) the debit(s), charge(s), or payment(s) will be submitted for payment;

(C) The amount(s) of the debit(s), charge(s), or payment(s);

(D) The customer's or donor's name;

(E) The customer's or donor's billing information, identified with sufficient specificity such that the customer or donor understands what account will be used to collect payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction;

---

[3] Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR part 226.

[4] Electronic Fund Transfer Act, 15 U.S.C. 1693 *et seq.*, and Regulation E, 12 CFR part 205.

[5] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

(F) A telephone number for customer or donor inquiry that is answered during normal business hours; and

(G) The date of the customer's or donor's oral authorization; or

(iii) Written confirmation of the transaction, identified in a clear and conspicuous manner as such on the outside of the envelope, sent to the customer or donor via first class mail prior to the submission for payment of the customer's or donor's billing information, and that includes all of the information contained in §§ 310.3(a)(3)(ii)(A)–(G) and a clear and conspicuous statement of the procedures by which the customer or donor can obtain a refund from the seller or telemarketer or charitable organization in the event the confirmation is inaccurate; *provided*, however, that this means of authorization shall not be deemed verifiable in instances in which goods or services are offered in a transaction involving a free-to-pay conversion and preacquired account information.

(4) Making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution.

(b) *Assisting and facilitating.* It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§ 310.3(a), (c) or (d), or § 310.4 of this Rule.

(c) *Credit card laundering.* Except as expressly permitted by the applicable credit card system, it is a deceptive telemarketing act or practice and a violation of this Rule for:

(1) A merchant to present to or deposit into, or cause another to present to or deposit into, the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant;

(2) Any person to employ, solicit, or otherwise cause a merchant, or an employee, representative, or agent of the merchant, to present to or deposit into

the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant; or

(3) Any person to obtain access to the credit card system through the use of a business relationship or an affiliation with a merchant, when such access is not authorized by the merchant agreement or the applicable credit card system.

(d) *Prohibited deceptive acts or practices in the solicitation of charitable contributions.* It is a fraudulent charitable solicitation, a deceptive telemarketing act or practice, and a violation of this Rule for any telemarketer soliciting charitable contributions to misrepresent, directly or by implication, any of the following material information:

(1) The nature, purpose, or mission of any entity on behalf of which a charitable contribution is being requested;

(2) That any charitable contribution is tax deductible in whole or in part;

(3) The purpose for which any charitable contribution will be used;

(4) The percentage or amount of any charitable contribution that will go to a charitable organization or to any particular charitable program;

(5) Any material aspect of a prize promotion including, but not limited to: the odds of being able to receive a prize; the nature or value of a prize; or that a charitable contribution is required to win a prize or to participate in a prize promotion; or

(6) A charitable organization's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity.

## §310.4  Abusive telemarketing acts or practices.

(a) *Abusive conduct generally.* It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Threats, intimidation, or the use of profane or obscene language;

(2) Requesting or receiving payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating until:

(i) The time frame in which the seller has represented all of the goods or services will be provided to that person has expired; and

(ii) The seller has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved. Nothing in this Rule should be construed to affect the requirement in the Fair Credit Reporting Act, 15 U.S.C. 1681, that a consumer report may only be obtained for a specified permissible purpose;

(3) Requesting or receiving payment of any fee or consideration from a person for goods or services represented to recover or otherwise assist in the return of money or any other item of value paid for by, or promised to, that person in a previous telemarketing transaction, until seven (7) business days after such money or other item is delivered to that person. This provision shall not apply to goods or services provided to a person by a licensed attorney;

(4) Requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person;

(5) Disclosing or receiving, for consideration, unencrypted consumer account numbers for use in telemarketing; *provided,* however, that this paragraph shall not apply to the disclosure or receipt of a customer's or donor's billing information to process a payment for goods or services or a charitable contribution pursuant to a transaction;

(6) Causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the customer or donor. In any telemarketing transaction, the seller or telemarketer must obtain the express informed consent of the customer or donor to be charged for the

goods or services or charitable contribution and to be charged using the identified account. In any telemarketing transaction involving preacquired account information, the requirements in paragraphs (a)(6)(i) through (ii) of this section must be met to evidence express informed consent.

(i) In any telemarketing transaction involving preacquired account information and a free-to-pay conversion feature, the seller or telemarketer must:

(A) obtain from the customer, at a minimum, the last four (4) digits of the account number to be charged;

(B) obtain from the customer his or her express agreement to be charged for the goods or services and to be charged using the account number pursuant to paragraph (a)(6)(i)(A) of this section; and,

(C) make and maintain an audio recording of the entire telemarketing transaction.

(ii) In any other telemarketing transaction involving preacquired account information not described in paragraph (a)(6)(i) of this section, the seller or telemarketer must:

(A) at a minimum, identify the account to be charged with sufficient specificity for the customer or donor to understand what account will be charged; and

(B) obtain from the customer or donor his or her express agreement to be charged for the goods or services and to be charged using the account number identified pursuant to paragraph (a)(6)(ii)(A) of this section; or

(7) Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call; *provided* that it shall not be a violation to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller or charitable organization on behalf of which a telemarketing call is placed, and the seller's or charitable organization's customer or donor service telephone number, which is answered during regular business hours.

(b) *Pattern of calls.* (1) It is an abusive telemarketing act or practice and a

violation of this Rule for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in, the following conduct:

(i) Causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number;

(ii) Denying or interfering in any way, directly or indirectly, with a person's right to be placed on any registry of names and/or telephone numbers of persons who do not wish to receive outbound telephone calls established to comply with §310.4(b)(1)(iii);

(iii) Initiating any outbound telephone call to a person when:

(A) that person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered or made on behalf of the charitable organization for which a charitable contribution is being solicited; or

(B) that person's telephone number is on the "do-not-call" registry, maintained by the Commission, of persons who do not wish to receive outbound telephone calls to induce the purchase of goods or services unless the seller

(f) has obtained the express agreement, in writing, of such person to place calls to that person. Such written agreement shall clearly evidence such person's authorization that calls made by or on behalf of a specific party may be placed to that person, and shall include the telephone number to which the calls may be placed and the signature[6] of that person; or

(ii) has an established business relationship with such person, and that person has not stated that he or she does not wish to receive outbound telephone calls under paragraph (b)(1)(iii)(A) of this section; or

(iv) Abandoning any outbound telephone call. An outbound telephone call is "abandoned" under this section if a person answers it and the telemarketer

[6] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

does not connect the call to a sales representative within two (2) seconds of the person's completed greeting.

(2) It is an abusive telemarketing act or practice and a violation of this Rule for any person to sell, rent, lease, purchase, or use any list established to comply with §310.4(b)(1)(iii)(A), or maintained by the Commission pursuant to §310.4(b)(1)(iii)(B), for any purpose except compliance with the provisions of this Rule or otherwise to prevent telephone calls to telephone numbers on such lists.

(3) A seller or telemarketer will not be liable for violating §310.4(b)(1)(ii) and (iii) if it can demonstrate that, as part of the seller's or telemarketer's routine business practice:

(i) It has established and implemented written procedures to comply with §310.4(b)(1)(ii) and (iii);

(ii) It has trained its personnel, and any entity assisting in its compliance, in the procedures established pursuant to §310.4(b)(3)(i);

(iii) The seller, or a telemarketer or another person acting on behalf of the seller or charitable organization, has maintained and recorded a list of telephone numbers the seller or charitable organization may not contact, in compliance with §310.4(b)(1)(iii)(A);

(iv) The seller or a telemarketer uses a process to prevent telemarketing to any telephone number on any list established pursuant to §310.4(b)(3)(iii) or 310.4(b)(1)(iii)(B), employing a version of the "do-not-call" registry obtained from the Commission no more than thirty-one (31) days prior to the date any call is made, and maintains records documenting this process;

(v) The seller or a telemarketer or another person acting on behalf of the seller or charitable organization, monitors and enforces compliance with the procedures established pursuant to §310.4(b)(3)(i); and

(vi) Any subsequent call otherwise violating §310.4(b)(1)(ii) or (iii) is the result of error.

(4) A seller or telemarketer will not be liable for violating 310.4(b)(1)(iv) if:

(i) the seller or telemarketer employs technology that ensures abandonment of no more than three (3) percent of all calls answered by a person, measured per day per calling campaign;

(ii) the seller or telemarketer, for each telemarketing call placed, allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call;

(iii) whenever a sales representative is not available to speak with the person answering the call within two (2) seconds after the person's completed greeting, the seller or telemarketer promptly plays a recorded message that states the name and telephone number of the seller on whose behalf the call was placed[7]; and

(iv) the seller or telemarketer, in accordance with §310.5(b)-(d), retains records establishing compliance with §310.4(b)(4)(i)-(iii).

(c) *Calling time restrictions.* Without the prior consent of a person, it is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in outbound telephone calls to a person's residence at any time other than between 8:00 a.m. and 9:00 p.m. local time at the called person's location.

(d) *Required oral disclosures in the sale of goods or services.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer in an outbound telephone call or internal or external upsell to induce the purchase of goods or services to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the seller;

(2) That the purpose of the call is to sell goods or services;

(3) The nature of the goods or services; and

(4) That no purchase or payment is necessary to be able to win a prize or participate in a prize promotion if a prize promotion is offered and that any purchase or payment will not increase the person's chances of winning. This disclosure must be made before or in conjunction with the description of the prize to the person called. If requested by that person, the telemarketer must disclose the no-purchase/no-payment

---

[7] This provision does not affect any seller's or telemarketer's obligation to comply with relevant state and federal laws, including but not limited to the TCPA, 47 U.S.C. 227, and 47 CFR part 64.1200.

entry method for the prize promotion; *provided,* however, that, in any internal upsell for the sale of goods or services, the seller or telemarketer must provide the disclosures listed in this section only to the extent that the information in the upsell differs from the disclosures provided in the initial telemarketing transaction.

(e) *Required oral disclosures in charitable solicitations.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer, in an outbound telephone call to induce a charitable contribution, to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the charitable organization on behalf of which the request is being made; and

(2) That the purpose of the call is to solicit a charitable contribution.

[68 FR 4669, Jan. 29, 2003, as amended at 69 FR 16373, Mar. 29, 2004]

### § 310.5 Recordkeeping requirements.

(a) Any seller or telemarketer shall keep, for a period of 24 months from the date the record is produced, the following records relating to its telemarketing activities:

(1) All substantially different advertising, brochures, telemarketing scripts, and promotional materials;

(2) The name and last known address of each prize recipient and the prize awarded for prizes that are represented, directly or by implication, to have a value of $25.00 or more;

(3) The name and last known address of each customer, the goods or services purchased, the date such goods or services were shipped or provided, and the amount paid by the customer for the goods or services;[8]

(4) The name, any fictitious name used, the last known home address and telephone number, and the job title(s) for all current and former employees

[8] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.,* and Regulation Z, 12 CFR 226, compliance with the recordkeeping requirements under the Truth in Lending Act and Regulation Z, shall constitute compliance with §310.5(a)(3) of this Rule.

directly involved in telephone sales or solicitations; *provided,* however, that if the seller or telemarketer permits fictitious names to be used by employees, each fictitious name must be traceable to only one specific employee; and

(5) All verifiable authorizations or records of express informed consent or express agreement required to be provided or received under this Rule.

(b) A seller or telemarketer may keep the records required by §310.5(a) in any form, and in the same manner, format, or place as they keep such records in the ordinary course of business. Failure to keep all records required by §310.5(a) shall be a violation of this Rule.

(c) The seller and the telemarketer calling on behalf of the seller may, by written agreement, allocate responsibility between themselves for the recordkeeping required by this Section. When a seller and telemarketer have entered into such an agreement, the terms of that agreement shall govern, and the seller or telemarketer, as the case may be, need not keep records that duplicate those of the other. If the agreement is unclear as to who must maintain any required record(s), or if no such agreement exists, the seller shall be responsible for complying with §§310.5(a)(1)-(3) and (5); the telemarketer shall be responsible for complying with §310.5(a)(4).

(d) In the event of any dissolution or termination of the seller's or telemarketer's business, the principal of that seller or telemarketer shall maintain all records as required under this Section. In the event of any sale, assignment, or other change in ownership of the seller's or telemarketer's business, the successor business shall maintain all records required under this Section.

### § 310.6 Exemptions.

(a) Solicitations to induce charitable contributions via outbound telephone calls are not covered by §310.4(b)(1)(iii)(B) of this Rule.

(b) The following acts or practices are exempt from this Rule:

(1) The sale of pay-per-call services subject to the Commission's Rule entitled "Trade Regulation Rule Pursuant

to the Telephone Disclosure and Dispute Resolution Act of 1992," 16 CFR Part 308, *provided*, however, that this exemption does not apply to the requirements of §§ 310.4(a)(1), (a)(7), (b), and (c);

(2) The sale of franchises subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures," ("Franchise Rule") 16 CFR Part 436, *provided*, however, that this exemption does not apply to the requirements of §§ 310.4(a)(1), (a)(7), (b), and (c);

(3) Telephone calls in which the sale of goods or services or charitable solicitation is not completed, and payment or authorization of payment is not required, until after a face-to-face sales or donation presentation by the seller or charitable organization, *provided*, however, that this exemption does not apply to the requirements of §§ 310.4(a)(1), (a)(7), (b), and (c);

(4) Telephone calls initiated by a customer or donor that are not the result of any solicitation by a seller, charitable organization, or telemarketer, *provided*, however, that this exemption does not apply to any instances of upselling included in such telephone calls;

(5) Telephone calls initiated by a customer or donor in response to an advertisement through any medium, other than direct mail solicitation, *provided*, however, that this exemption does not apply to calls initiated by a customer or donor in response to an advertisement relating to investment opportunities, business opportunities other than business arrangements covered by the Franchise Rule, or advertisements involving goods or services described in §§ 310.3(a)(1)(vi) or 310.4(a)(2)-(4); or to any instances of upselling included in such telephone calls;

(6) Telephone calls initiated by a customer or donor in response to a direct mail solicitation, including solicitations via the U.S. Postal Service, facsimile transmission, electronic mail, and other similar methods of delivery in which a solicitation is directed to specific address(es) or person(s), that clearly, conspicuously, and truthfully discloses all material information listed in § 310.3(a)(1) of this Rule, for any

goods or services offered in the direct mail solicitation, and that contains no material misrepresentation regarding any item contained in § 310.3(d) of this Rule for any requested charitable contribution; *provided*, however, that this exemption does not apply to calls initiated by a customer in response to a direct mail solicitation relating to prize promotions, investment opportunities, business opportunities other than business arrangements covered by the Franchise Rule, or goods or services described in §§ 310.3(a)(1)(vi) or 310.4(a)(2)-(4); or to any instances of upselling included in such telephone calls; and

(7) Telephone calls between a telemarketer and any business, except calls to induce the retail sale of nondurable office or cleaning supplies; *provided*, however, that § 310.4(b)(1)(iii)(B) and § 310.5 of this Rule shall not apply to sellers or telemarketers of nondurable office or cleaning supplies.

## § 310.7 Actions by states and private persons.

(a) Any attorney general or other officer of a state authorized by the state to bring an action under the Telemarketing and Consumer Fraud and Abuse Prevention Act, and any private person who brings an action under that Act, shall serve written notice of its action on the Commission, if feasible, prior to its initiating an action under this Rule. The notice shall be sent to the Office of the Director, Bureau of Consumer Protection, Federal Trade Commission, Washington, D.C. 20580, and shall include a copy of the state's or private person's complaint and any other pleadings to be filed with the court. If prior notice is not feasible, the state or private person shall serve the Commission with the required notice immediately upon instituting its action.

(b) Nothing contained in this Section shall prohibit any attorney general or other authorized state official from proceeding in state court on the basis of an alleged violation of any civil or criminal statute of such state.

## § 310.8 Fee for access to the National Do Not Call Registry.

(a) It is a violation of this Rule for any seller to initiate, or cause any

telemarketer to initiate, an outbound telephone call to any person whose telephone number is within a given area code unless such seller, either directly or through another person, first has paid the annual fee, required by §310.8(c), for access to telephone numbers within that area code that are included in the National Do Not Call Registry maintained by the Commission under §310.4(b)(1)(iii)(B); *provided*, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§310.4(b)(1)(iii)(B)(*i*) or (*ii*), and the seller does not access the National Do Not Call Registry for any other purpose.

(b) It is a violation of this Rule for any telemarketer, on behalf of any seller, to initiate an outbound telephone call to any person whose telephone number is within a given area code unless that seller, either directly or through another person, first has paid the annual fee, required by §310.8(c), for access to the telephone numbers within that area code that are included in the National Do Not Call Registry; *provided*, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§310.4(b)(1)(iii)(B)(*i*) or (*ii*), and the seller does not access the National Do Not Call Registry for any other purpose.

(c) The annual fee, which must be paid by any person prior to obtaining access to the National Do Not Call Registry, is $62 per area code of data accessed, up to a maximum of $17,050; *provided*, however, that there shall be no charge for the first five area codes of data accessed by any person, and *provided further*, that there shall be no charge to any person engaging in or causing others to engage in outbound telephone calls to consumers and who is accessing the National Do Not Call Registry without being required under this Rule, 47 CFR 64.1200, or any other Federal law. Any person accessing the National Do Not Call Registry may not participate in any arrangement to share the cost of accessing the registry, including any arrangement with any telemarketer or service provider to divide the costs to access the registry among various clients of that telemarketer or service provider.

(d) After a person, either directly or through another person, pays the fees set forth in §310.8(c), the person will be provided a unique account number which will allow that person to access the registry data for the selected area codes at any time for twelve months following the first day of the month in which the person paid the fee ("the annual period"). To obtain access to additional area codes of data during the first six months of the annual period, the person must first pay $62 for each additional area code of data not initially selected. To obtain access to additional area codes of data during the second six months of the annual period, the person must first pay $31 for each additional area code of data not initially selected. The payment of the additional fee will permit the person to access the additional area codes of data for the remainder of the annual period.

(e) Access to the National Do Not Call Registry is limited to telemarketers, sellers, others engaged in or causing others to engage in telephone calls to consumers, service providers acting on behalf of such persons, and any government agency that has law enforcement authority. Prior to accessing the National Do Not Call Registry, a person must provide the identifying information required by the operator of the registry to collect the fee, and must certify, under penalty of law, that the person is accessing the registry solely to comply with the provisions of this Rule or to otherwise prevent telephone calls to telephone numbers on the registry. If the person is accessing the registry on behalf of sellers, that person also must identify each of the sellers on whose behalf it is accessing the registry, must provide each seller's unique account number for access to the national registry, and must certify, under penalty of law, that the sellers will be using the information gathered from the registry solely to comply with the provisions of

this Rule or otherwise to prevent telephone calls to telephone numbers on the registry.

[68 FR 45144, July 31, 2003, as amended at 69 FR 45585, July 30, 2004; 70 FR 43280, July 27, 2005; 71 FR 43054, July 31, 2006]

### §310.9 Severability.

The provisions of this Rule are separate and severable from one another. If any provision is stayed or determined to be invalid, it is the Commission's intention that the remaining provisions shall continue in effect.

## PART 311—TEST PROCEDURES AND LABELING STANDARDS FOR RECYCLED OIL

Sec.
311.1 Definitions.
311.2 Stayed or invalid parts.
311.3 Preemption.
311.4 Testing.
311.5 Labeling.
311.6 Prohibited acts.

AUTHORITY: 42 U.S.C. 6363(d).

SOURCE: 60 FR 55421, Oct. 31, 1995, unless otherwise noted.

### §311.1 Definitions.

As used in this part:

(a) *Manufacturer* means any person who re-refines or otherwise processes used oil to remove physical or chemical impurities acquired through use or who blends such re-refined or otherwise processed used oil with new oil or additives.

(b) *New oil* means any synthetic oil or oil that has been refined from crude oil and which has not been used and may or may not contain additives. Such term does not include used oil or recycled oil.

(c) *Processed used* oil means re-refined or otherwise processed used oil or blend of oil, consisting of such re-refined or otherwise processed used oil and new oil or additives.

(d) *Recycled oil* means processed used oil that the manufacturer has determined, pursuant to section 311.4 of this part, is substantially equivalent to new oil for use as engine oil.

(e) *Used oil* means any synthetic oil or oil that has been refined from crude oil, which has been used and, as a result of such use, has been contaminated by physical or chemical impurities.

(f) *Re-refined oil* means used oil from which physical and chemical contaminants acquired through use have been removed.

### §311.2 Stayed or invalid parts.

If any part of this rule is stayed or held invalid, the rest of it will remain in force.

### §311.3 Preemption.

No law, regulation, or order of any State or political subdivision thereof may apply, or remain applicable, to any container of recycled oil, if such law, regulation, or order requires any container of recycled oil, which container bears a label in accordance with the terms of §311.5 of this part, to bear any label with respect to the comparative characteristics of such recycled oil with new oil that is not identical to that permitted by §311.5 of this part.

### §311.4 Testing.

To determine the substantial equivalency of processed used oil with new oil for use as engine oil, manufacturers or their designees must use the test procedures that were reported to the Commission by the National Institutes of Standards and Technology ("NIST") on July 27, 1995, entitled "Engine Oil Licensing and Certification System," American Petroleum Institute ("API"), Publication 1509, Thirteenth Edition, January 1995. API Publication 1509, Thirteenth Edition has been updated to API Publication 1509, Fifteenth Edition, April 2002. API Publication 1509, Fifteenth Edition, April 2002, is incorporated by reference. This incorporation by reference is approved by the Director of the Federal Register in accordance with 5 U.S.C. 552(a) and 1 CFR part 51. Copies of the materials incorporated by reference may be obtained from: API, 1220 L Street, NW., Washington, DC 20005. Copies may be inspected at the Federal Trade Commission, Consumer Response Center, Room 130, 600 Pennsylvania Avenue, NW., Washington, DC 20580, or at the National Archives and Records Administration ("NARA"). For information on the availability of this material at NARA, call (202) 741-6030, or go to:

## ATTACHMENT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, ) | |
| ) | Civil No. |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| GLENN L. PATTEN, individually, and ) | |
| doing business as Glenn L. Patten ) | |
| Marketing Solutions and as Marketing ) | |
| Solutions, ) | |
| ) | |
| Defendant. ) | |

## AFFIDAVIT OF DEFENDANT GLENN L. PATTEN ATTESTING TO TRUTHFULNESS OF INDIVIDUAL FINANCIAL STATEMENT

I, Glenn L. Patten, Sr., hereby state that the information contained in my Individual

Financial Statements dated February 6, 2008, and February 15, 2008, was, to the best of my

information, knowledge, and belief, true, accurate, and complete at such time.

I declare under penalty of perjury under the laws of the United States that the foregoing is

true and correct. Executed on _____ [date], at _____

[city and state/province].

_____
[Signature of Defendant]

_____
[Print Full Name]

State/Province of _____, City of _____

Subscribed and sworn to before me

this _____ day of _____, 200 ___.

_____
Notary Public
My Commission Expires:

_____